## STATE v. PRITCHARD.

1.　Laws 1901, c. 141, § 11, provides that it shall be unlawful for any person to furnish any spirituous liquors to any person in the habit of getting intoxicated, after notification, and that the fact of furnishing any liquor in any place where intoxicating liquors are sold to any such person shall be prima facie evidence of an intent to violate the law. There was evidence that after notice that a certain person was in the habit of getting intoxicated such person was seen at defendant's bar with an ordinary whisky bottle and two whisky glasses before him, and that he poured what looked like whisky out of the bottle into one of the glasses and drank the liquor, while defendant filled the other glass. Held to justify a verdict of guilty.

2.　Where the information charged defendant with furnishing spirituous liquor to one who was in the habit of getting intoxicated, and the evidence was that the liquor furnished was whiskey, the fact that in an

instruction the court referred to the liquor as "intoxicating," instead of "spirituous," gave defendant no just cause for complaint.

(Opinion filed Aug 13, 1902)

Error to circuit court, Yankton county, Hon. E. G. SMITH, Judge.

John Pritchard was convicted of furnishing spirituous liquor to one who was in the habit of getting intoxicated, after written notice of such habit, and brings error. Affirmed.

*Titus E. Price*, for plaintiff in error.

*A. W. Burtt*, Atty. Gen., and *John Holman*, State's Atty., for the State.

FULLER, J. The information upon which the conviction complained of is based charges that "John Pritchard, on the 26th day of October, 1901, at the city of Yankton, in the county of Yankton and state of South Dakota, did unlawfully and willfully furnish, give, and sell spirituous liquor to one Sampson Erickson, the said Sampson Erickson being then and there in the habit of getting intoxicated, and the said John Pritchard having then and there previously been notified in writing that the said Sampson Erickson was in the habit of getting intoxicated, and not to sell intoxicating liquors to him, the said Sampson Erickson." So far as material to this case, section 11, c. 141, Laws 1901, is as follows: "It shall not be lawful for any person to sell, furnish or give away any spirituous, malt brewed, fermented or vinous liquors  *  *  *  to any person in the habit of getting intoxicated when notified in writing by any person or persons that such person is in the habit of getting intoxicated.  *  *  *  The fact of selling, giving or furnishing any liquor in any place where intoxicating liquors are sold or kept for sale  *  *  *  to any person in the habit

of getting intoxicated, * * * shall be prima facie evidence of an intent on the part of the person so selling, giving or furnishing such liquor to violate the law." The undisputed evidence shows that the defendant, at the time charged in the information, owned and operated a place where intoxicating liquors were kept and sold at retail according to the usual practice of saloon keepers. Sampson Erickson was a person in the habit of getting intoxicated, and of such fact the defendant had been fully apprised by the written notice specified in the statute above quoted. At the time Erickson was seen at the bar of the saloon, the defendant was waiting upon his customers, and was familiar with the contents of such written notice, then in his actual possession. From the testimony of Mr. Reeves it appears that Erickson stood at the bar with two whisky glasses before him, and what looked like a whisky bottle in his hand, out of which he was pouring liquor that looked like whisky into one of the glasses, while the defendant, who stook behind the bar, was filling up the other glass; it being what the witness called "a wash glass." On behalf of the state, T. J. Welby further testified in part as follows: "When I entered the saloon, there was one man standing in the corner to my left. Sampson Erickson was at the bar with Freddie Larson. Q. Well, what did you observe these men were doing when you came in? A. Sampson Erickson was drinking out of what I would call a whisky glass. Q. What else did he do—anything? A. Well, after he finished the whisky—what I thought was whisky—he took the 'wash.' Q. Just state what you said to the defendant. A. I says, 'You have been doing something you have been warned not to do,' and Mr. Erickson turned round to me, and says, 'I haven't paid for this liquor.

What are you going to do about it?' "   It was also shown that
the bottle ' was a bottle that was the ordinary whisky bottle
they keep back of the bar, and contained what looked like
whisky."   At the conclusion of all the evidence the court in-
structed the jury in part as follows:   "And if you further find
that the defendant, at the time and place named in the informa-
tion, did sell or give intoxicating liquor to the said Sampson
Erickson, then, gentlemen of the jury, that would constitute
what the law calls a prima facie case against the defendant.
That is to say, if there were no other evidence, or no other
circumstances in evidence, it would be sufficient to warrant the
jury in finding a verdict of guilty upon the charge contained
in this information—did the defendant, after· such notice, sell
intoxicating liquor to Sampson Erickson?"   Now a reversal is
urged for the reason that the court, in designating the liquor
about which the witnesses testified, used the word "intoxicat-
ing," instead of "spirituous," as employed in the information;
but in view of the fact that all spirituous liquor is intoxicating,
and there is no claim nor evidence tending to show that any-
thing but whisky, which is both spirituous and intoxicating,
was furnished to Erickson, the words, though not strictly
synonymous, are convertible, and the defendant has no just
cause for complaint.   Though controverted, the evidence
offered on the part of the state, together with the reasonable
inferences arising therefrom, is sufficient to justify the verdict
of guilty, and the judgment of the trial court entered thereon
is affirmed.